UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JIHAD ACHOUATTE,

                    Petitioner,

        -vs-                                    **No. 10-CV-6203(MAT)**
                                                **DECISION AND ORDER**
ERIC H. HOLDER, Attorney General of
the United States, JANET NAPOLITANO,
Secretary of the Department of
Homeland Security, MICHAEL T. PHILIPS,
U.S. ICE Field Office Director for
the Buffalo Field Office; and
Warden of Immigration Facility,

                    Respondents.
_____

## I.   Introduction

Pro se petitioner Jihad Achouatte ("Achouatte" or "Petitioner") is an alien under a final immigration order of removal. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from continued detention in the custody of Respondents ("the Government" or "DHS/ICE") pending the execution of the final order of removal.

## II.  Factual Background and Procedural History

Petitioner, a native and citizen of Morocco, was admitted to the United States on or about October 4, 2003 as a nonimmigrant visitor with authorization to remain until April 1, 2004. On December 29, 2004 his status was adjusted to that of a conditional resident. On June 8, 2007, the conditional provision of his status was lifted.

-1-

Petitioner was placed in removal proceedings on June 20, 2008, on the basis that he was convicted on January 16, 2008, of possession of a controlled substance (cocaine) in Warren County, New York.  Petitioner was charged with being subject to removal pursuant to Immigration and Nationality Act ("INA") section 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.").

At a videoconferenced hearing on January 23, 2009, Petitioner, through counsel, admitted to all but the final allegation that he had been convicted of cocaine possession. He denied the charge that he was removable.

On March 23, 2009, after examining the controlled substance report and the transcript of Petitioner's guilty plea, the Immigration Judge ("IJ") found by clear and convincing evidence that Petitioner had been convicted of fourth degree possession of a controlled substance; specifically, cocaine. Petitioner had no viable claims for exemption and the IJ accordingly ordered that Petitioner be removed to Morocco.

On July 8, 2009, the Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision, and this became the final agency determination in Petitioner's case.

Achouatte was received into DHS/ICE custody on September 28, 2009, upon his release from the custody of the New York State Department of Correctional Services. Achouatte was subject to mandatory detention for the ninety-day removal period pursuant to INA § 241(a), 8 U.S.C. § 1231(a), as an alien subject to a final order of removal. DHS/ICE commenced efforts to secure a travel document for Achouatte's removal to Morocco.

On December 21, 20019, Petitioner filed a petition for review, along with a motion for a stay of removal, in the United States Court of Appeals for the Second Circuit. Both applications remain pending.

On December 22, 2009, DHS/ICE was notified by a representative of the Consulate General of Morocco a travel document would be issued for Achouatte. Thus, within the ninety-day removal period, DHS/ICE received confirmation that a travel document would be available for Achouatte's repatriation to Morocco. However, Achouatte's filing of the petition for review along with a motion for stay in the Second Circuit interrupted the removal process. Due to a forbearance policy that is based on an agreement between

DHS/ICE and the Second Circuit, DHS/ICE is prevented from executing Achouatte's removal order.[1]

The Second Circuit determined that the case should be held in suspense pending that court's resolution of two appeals (Luna v. Holder, 07-3796-ag; and Thompson v. Holder, 08-4840-ag). See Docket Entry dated 3/14/2011 in Achouatte v. Holder, 09-5234-ag (2d Cir.).

On April 6, 2010, Petitioner filed the instant petition for a writ of habeas corpus, alleging that his continued detention was violative of due process and seeking release from Respondents' custody under an order of supervision.

Respondents answered the petition, arguing that Petitioner's detention was in accordance with the law and not contrary to the Supreme Court's holding in Zadvydas v. Davis, 533 U.S. 678 (2001).

Petitioner filed a traverse, asserting that he is entitled to be supervised release because he is not a danger to society or a flight risk.

The Second Circuit issued a decision on March 3, 2011, in Luna v. Holder, 637 F.3d 85 (2d Cir. 2011). The docket in Achouatte's

---

[1] Numerous decisions have acknowledged the Second Circuit Court's "forbearance policy" pursuant to which DHS abstains from removing aliens who have filed petitions for review with corresponding motions for stay in the Second Circuit. Under the "forbearance policy" no formal stay order need be issued to prevent removal. See, e.g., Jiang v. Chertoff, Civ. No. 06-4486 (DSD/RLE), 2008 WL 80582, at *6 n. 11 (D. Minn. Jan. 8, 2008)(discussing Second Circuit forbearance policy and denying alien's habeas petition for release); Shehnaz v. Ashcroft, No. 04 Civ.2578 DLC, 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004)(where Second Circuit had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to forbearance policy).

case contains a notation that his case is no longer in suspense, since Luna has been decided. Achouatte's petition for review and motion to stay have been submitted to the Circuit panel sitting on July 28, 2011. Id., Docket Entry dated 6/24/2011. A decision from the Second Circuit was issued on August 1, 2011, and is discussed further, infra.

For the reasons that follow, the petition is dismissed without prejudice.

**III. Discussion**

INA § 241(a), 8 U.S.C. § 1231(a), authorizes detention for a period reasonably necessary to accomplish an alien's removal. Zadvydas, 533 U.S. at 699-700. Detention is presumptively reasonable for a period of six months, after which time the alien may attack the constitutionality of his continued detention. Id. at 701. The Supreme Court set no specific time limits on detention, instead ruling that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. The Supreme Court explained in Zadvydas that

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien

may be held in confinement until it has been determined
that there is no significant likelihood of removal in the
reasonably foreseeable future.

Id.

Following Zadvydas, the Government issued regulations
providing for custody reviews of aliens who have been in detention
for more than six months following the issuance of a final order of
removal. See "Continued Detention of Aliens Subject to Final Orders
of Removal," 66 Fed. Reg. 56967 (Nov. 14, 2001) (now codified at 8
C.F.R. Pts. 3 and 241) (providing that a detainee who has been in
post-removal order custody for more than six months may request the
agency for release on the asserted ground that there is "no
significant likelihood of repatriation in the reasonably
foreseeable future").

Pursuant to the Zadvydas decision and the regulations enacted
after Zadvydas was issued, it is Achouatte's burden to demonstrate
that there is no significant likelihood of his removal in the
reasonably foreseeable future. Achouatte has not met this burden.
In his petition, Achouatte alleges "that the Moroccan Consulate is
refusing and not responding to ICE's request for travel document."
Petition, ¶ 27 (Docket No. 1) . However, there is no support for
this claim. To the contrary, the DHS records show that a
representative of the Consulate has confirmed that a travel
document will be issued for Achouatte's removal from the United

States. Declaration of Donald J. Vaccaro, Jr. ("Vaccaro Decl.") ¶ 16 (Docket No. 6-1). The Consulate was able to verify Achouatte's identity based upon Achouatte's original expired passport and original birth certificate. Vaccaro Decl., ¶ 14; Warrant of Removal/Deportation, Ex. A, pp. 24-31 (Docket No. 6-2).

As noted above, the Government has not been able to execute the immigration order of removal against Achouatte due to his filing of a petition for review and motion for a stay of removal in the Second Circuit Court. Vaccaro Decl., ¶ 15. The decisions that the Second Circuit have been awaiting, <u>Luna v. Holder</u> and <u>Thompson v. Holder</u>, held that the application of the 30-day filing deadline[2] to two foreign nationals challenging final orders of removal did not violate the Constitution's Suspension Clause. The Second Circuit found that the statutory motion to reopen process constituted an adequate and effective substitute for federal habeas review, since the motion-to-reopen process could not be unilaterally terminated by the Government, and since BIA denials were subject to meaningful judicial review.

Because an adequate and effective substitute for habeas review was available for Luna's and Thompson's claims regarding the timeliness of their appeals, the Second Circuit concluded that the 30-day filing deadline as applied to Luna and Thompson did not

---

[2]

Under Section 242(b)(1), 8 U.S.C. § 1252(b)(1), a petition for review of a final order of removal "must be filed not later than 30 days after the date of the final order of removal."

violate the Suspension Clause. Thus, the Second Circuit held, it lacked jurisdiction over their petitions for review. Luna, 637 F.3d at 104. The Second Circuit noted that Petitioners Luna and Thompson were free to file motions to reopen with the BIA, requesting equitable tolling and ultimately the reissuance of their final orders of removal. Id. at 104-05.

In Achouatte's case in which he petitioned the Second Circuit to review the order for removal, the Government moved to dismiss his petition for review because it was not timely filed. The final order of removal in this case was July 8, 2009, the date the BIA affirmed the IJ's decision. Any petition for review would have had to have been filed with the Second Circuit no later than August 7, 2009, which Petitioner did not file until December 21, 2009. This was four and a half months after the BIA's decision and well after the 30-day time limit for filing a petition for review. Petitioner has never argued that he did not receive the BIA's decision.

On August 1, 2011, the Second Circuit issued a Decision and Order in Achouatte's case in which it granted the Government's motion to dismiss the petition for review and denied Achouatte's pending motions for a stay of removal and appointment of counsel. See Docket Entry dated Aug. 1, 2011, in Achouatte v. Holder, 09-5234-ag (2d Cir.). The Second Circuit held, in accordance with Lunav. Holder, 637 F.3d 85, supra, that it did not have

jurisdiction over Achouatte's petition for review because it was not timely filed.

The Second Circuit advised Achouatte that his claim that he was prevented from timely filing his petition due to officially-created circumstances and ineffective assistance of counsel was "more appropriately raised in a statutory motion to reopen filed with the Board of Immigration Appeals, requesting equitable tolling and reissuance of the final order of removal." Achouatte v. Holder, 09-5234-ag (2d Cir. Aug. 1, 2011) (unreported opn.) (citing Luna, 637 F.3d at 87, 104-05).

Because Achouatte's petition has been dismissed by the Second Circuit for lack of jurisdiction, the forbearance policy will cease to be effective. Furthermore, the Second Circuit expressly denied his motion for a stay of removal. DHS/ICE accordingly may proceed with Achouatte's removal from the United States. As noted above, a travel document has been obtained for Achouatte, and there remain no judicially-related impediments to his removal–the forbearance policy is no longer in effect and the motion for a stay of removal was denied. In light of these developments, Petitioner has not established that there is no significant likelihood of his removal in the reasonably foreseeable future.

Even if Achouatte moves to reopen the BIA proceeding, this nevertheless does not require that his deportation be delayed. Ahmad v. Gonzales, 204 Fed. Appx. 98, 99, 2006 WL 3228809, at *1 n.

1 (2d Cir. Nov. 7, 2006) (citing 8 C.F.R. § 1003.2(f) (providing that the filing of a motion to reopen usually "shall not stay the execution of any decision made in the case"); see also Michael v. INS, 48 F.3d 657, 662 (2d Cir. 1995) ("Where an alien does not directly seek review of a final deportation order in the court of appeals, but instead moves to reopen his or her administrative deportation proceedings, the automatic stay described above will not take effect until after the motion to reopen has been adversely determined and the alien timely seeks judicial review.") (citing Vlassis v. INS, 963 F.2d 547, 548 (2d Cir. 1992) (per curiam) (holding that motion to reopen immigration proceedings does not stay the execution of a deportation order)); see also Garcia v. Holder, ___ F. Supp.2d ___, 2011 WL 2140473, at *3 (S.D.N.Y. June 1, 2011) (denying § 2241 petitioner's motion to admit him to bail and stay his removal pending completion of his motion to reopen his removal proceeding with the BIA).[3] Because a motion to reopen the BIA proceeding does not effectively stay his removal,

---

[3]

   The district court noted in Garcia v. Holder that the Second Circuit would have the authority to review a denial by the BIA of the petitioner's motion to reopen, provided that a proper petition for review were filed before that court within thirty days after the ruling. 2011 WL 2140473, at *3. The district court stated that petitioner Garcia was "at liberty to move in that court under the All Writs Act for a stay of removal and to argue that a stay is necessary to protect the Court of Appeals's ability ultimately to determine whether any denial of the [motion to reopen] were proper." Id. (footnote omitted). The All Writs Act provides in relevant part that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law." Michael v. INS, 48 F.3d at 657 (quoting 28 U.S.C. § 1651(a)).

the Court cannot consider a possible motion to reopen as a factor that would further delay his deportation.

The Court notes that "[i]f it subsequently appears that [Achouatte]'s removal is no longer reasonably foreseeable, he may file another petition" for habeas corpus in the appropriate district court. Kassama v. Department of Homeland Sec. (USICE), 553 F. Supp.2d 301 (W.D.N.Y. 2008).

## IV.   Conclusion

For the foregoing reasons, Jihad Achouatte's § 2241 petition is denied without prejudice, with leave to re-file, should it subsequently appear that Achouatte's removal is no longer reasonably foreseeable.

Because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

In light of the Second Circuit's dismissal of Achouatte's request for leave to appeal in forma pauperis, this Court likewise denies leave to proceed in forma pauperis on appeal.

**SO ORDERED.**

S/Michael A. Telesca

_____
                    MICHAEL A. TELESCA
                United States District Judge

DATED:     August 12, 2011
           Rochester, New York

-11-